UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**DARSHEE MOSLEY,**

       **Plaintiff,**

**v.**                                                       **Case No:  6:12-cv-570-Orl-GJK**

**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

---

**MEMORANDUM OF DECISION**

Darshee Mosley (the "Claimant"), appeals to the District Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for benefits. R. 24.  Claimant argues that the Administrative Law Judge (the "ALJ") erred by: 1) failing to give proper weight to the opinions of Dr. Abdul Mamsa, a treating physician; 2) failing to find her seizure disorder meets the listing at 20 C.F.R. Part 404, Subpart P, Appendix 1, 11.03 ("Listing 11.03"); and 3) dismissing her testimony regarding her seizures and fatigue.  Doc. No. 24 at 6-12.  For the reasons set forth below, the Commissioner's final decision is **AFFIRMED**.

**I.    STANDARD OF REVIEW.**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla —  i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838

(11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

## II. ANALYSIS.

### A. Dr. Mamsa.

Claimant argues that the ALJ's determination to assign no weight to Dr. Mamsa's opinions is not supported by substantial evidence. Doc. No. 24 at 8-10. In response, the Commissioner argues that Claimant mischaracterizes the ALJ's determination regarding Dr. Mamsa's opinion(s). Doc. No. 25 at 13. The Commissioner argues that the ALJ only assigned weight to Dr. Mamsa's opinion that the Claimant "has been unable to work due to the recurrent seizures." Doc. No. 25 at 13 (citing R. 450). Based on its interpretation of the ALJ's finding,

the Commissioner argues that the ALJ's decision to assign no weight to Dr. Mamsa's opinion is supported by substantial evidence. Doc. No. 25 at 13-16.

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining disability. The Eleventh Circuit recently clarified the standard the Commissioner is required to utilize when considering medical opinion evidence. In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178-79 (11th Cir. 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id.* (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)).

Absent good cause, the opinion of a treating physician must be accorded substantial or considerable weight. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

> Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."

*Johnson v. Barnhart*, 138 F. App'x. 266, 269 (11th Cir. 2005) (quoting *Phillips*, 357 F.3d at 1240-41). Thus, good cause exists to give a treating physician's opinion less than substantial weight when the opinion is not bolstered by the evidence, evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's medical records.

Dr. Mamsa treated Claimant on approximately eight (8) occasions between August 30, 2008 and December 17, 2009. R. 453-62, 493-4. Accordingly, Dr. Mamsa qualifies as a treating

physician. *See* 20 C.F.R. § 404.1502 (defining a treating physician as the claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]").

Claimant initially presented to Dr. Mamsa reporting that she was experiencing dizziness, confusion, and intermittent episodes of shaking. R. 462. Dr. Mamsa diagnosed Claimant with seizure disorder. R. 459. Despite Claimant's complaints of seizures, each of Claimant's neurological exams was negative. R. 451, 455-6, 459-60, 462, 493-4. On April 15, 2009, Dr. Mamsa completed a seizure evaluation (the "Evaluation") with respect to Claimant. R. 453. In it, Dr. Mamsa states that Claimant loses consciousness during seizures. R. 453. Dr. Mamsa further indicates that the postictal manifestations of Claimant's seizures include confusion, exhaustion, and muscle strain. R. 453.[1] Among other things, the Evaluation requested Dr. Mamsa to opine about the "degree to which having a seizure interferes with [Claimant's] daily activities following a seizure" and "how often [he] anticipate[s] that [Claimant's] impairments or treatment would cause [Claimant] to be absent from work[.]" R. 453. Dr. Mamsa, however, offered no opinions with respect these questions. *See* R. 453. On June 29, 2009, Claimant underwent an electroencephalogram ("EEG") ordered by Dr. Mamsa, which failed to show any abnormal activity or seizure. R. 452. On August 20, 2009, Dr. Mamsa authored a letter, which reads, in relevant part, as follows: "The [Claimant] continues to have intermittent seizures and claims to have had several breakthrough seizures in the past few weeks. [Claimant] has been unable to work due to the recurrent seizures." R. 450.

At step two of the sequential analysis, the ALJ found, in relevant part, that Claimant's seizure disorder is a severe impairment. R. 16. At step four of the sequential analysis, the ALJ

---

[1] Postictal is defined as "[f]ollowing a seizure." Stedman's Medical Dictionary 1413 (26th ed. 1995).

thoroughly discussed the evidence pertaining to Claimant's seizures. R. 19-21. In particular, the ALJ noted that MRI and CT scans of Claimant's brain in January 2008, when Claimant allegedly began to experience the seizures, March 2008, and June 2008, yielded unremarkable results. R. 19-20. Thereafter, the ALJ thoroughly discussed Dr. Mamsa's treatment records. R. 20-21. In doing so, the ALJ noted, among other things, that an "EEG report dated June 29, 2009 revealed normal readings and failed to show any abnormal activity or seizure" and that "[t]he records by Dr. Mamsa reveal he consistently noted that claimant 'claimed' to have breakthrough seizures but her testing was normal." R. 21.

After a thorough discussion of the evidence concerning Claimant's seizure disorder, the ALJ proceeded to assign weight to Dr. Mamsa's opinion. The ALJ's decision reads:

> As for the opinion evidence, Dr. Mamsa noted on August 20, 2009, the claimant claimed to have had several seizures in the past few weeks. Dr. Mamsa indicated the claimant had been unable to work due to the recurrent seizures (Exhibit 14F). The undersigned gives no weight to the opinion that the claimant had been unable to work due to recurrent seizures as it is based only on her self-report. All of claimant's testing, including MRI's and EEG's were normal, which reflects poorly on her credibility. Furthermore, Dr. Mamsa noted the claimant's neurological examination had remained stable since her last visit.

R. 22.

Claimant argues that the ALJ erred in assigning no weight to Dr. Mamsa's opinions, thus suggesting that Dr. Mamsa offered multiple opinions concerning Claimant's ability to function. Doc. No. 24 at 8-10. Conversely, the Commissioner contends that that the ALJ only assigned weight to Dr. Mamsa's opinion that Claimant is unable to work due to her recurrent seizures. Doc. No. 25 at 13. The Commissioner accurately characterizes the ALJ's actions. Dr. Mamsa opined only once concerning Claimant's ability to function, and that occurred in the August 20, 2009 letter. R. 450. As stated above, the ALJ clearly assigned weight to Dr. Mamsa's sole

opinion.  R. 22.  Accordingly, the Court will address whether the ALJ's decision to assign no weight to Dr. Mamsa's opinion is supported by substantial evidence.

The ALJ offered three reasons for assigning no weight to Dr. Mamsa's opinion.  First, the ALJ noted that Dr. Mamsa's opinion is "based only on [Claimant's] self-report."  R. 22.  Second, the ALJ noted that "[a]ll of claimant's testing, including MRI's and EEG's were normal[.]"  R. 22.  Finally, the ALJ noted that the Dr. Mamsa indicated that Claimant's neurological examinations have been normal.  R. 21.  The Court finds that each of the reasons offered by the ALJ is supported by the record.  Further, taken together, the Court finds that the reasons offered by the ALJ provide substantial evidence to support the ALJ's decision to assign no weight to Dr. Mamsa's opinion that Claimant is unable to work.  *See Johnson*, 138 F. App'x. at 269 (good cause exists to assign a treating physician's opinion less than substantial weight when the "treating physician's opinion was not bolstered by the evidence").

**B.  Listings.**

Claimant advances two arguments with respect to the ALJ's finding that Claimant's seizure disorder does not meet Listing 11.03.  First, Claimant contends that the ALJ erred when it did not discuss the evidence supporting its finding that Claimant's seizure disorder did not meet Listing 11.03.  Doc. No. 24 at 6 (citing *Miller v. Commissioner of Social Security*, 181 F.Supp.2d 816, 820 (S.D. Ohio 2001)).  Second, Claimant contends that the ALJ's finding that Claimant's seizure disorder does not meet Listing 11.03 is not supported by substantial evidence.  Doc. No. 24 at 6-8.  Conversely, the Commissioner argues that there is substantial evidence supporting the ALJ's determination that Claimant's seizure disorder does not meet Listing 11.03.  Doc. No. 25 at 4-10.[2]

---

[2] Although the Commissioner does not directly respond to Claimant's argument that the ALJ erred by failing to discuss the evidence supporting its finding that Claimant's seizure disorder does not meet Listing 11.03, the

At step three of the ALJ's sequential analysis, the ALJ must consider whether a claimant's impairments, individually or in combination, meet or equal any of the impairments contained in the Listing of Impairments (the "Listings"). The Listings identify impairments which are considered severe enough to prevent a person from engaging in gainful activity. 20 C.F.R. § 404.1525(a). By meeting a listed impairment or otherwise establishing an equivalence, a claimant is presumptively determined to be disabled regardless of his age, education, or work experience. *Id.* Thus, an ALJ's sequential evaluation of a claim ends if the claimant can establish the existence of a listed impairment. *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

If the claimant contends that the impairment meets a listed impairment, the claimant bears the burden of "present[ing] specific medical findings that meet the various tests listed under the description of the applicable impairment." *Wilkinson ex rel. Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987). In doing so, the claimant must have a diagnosed condition that is included in the listings. *Id.* Diagnosis of a listed impairment, however, is not enough, as the claimant must also provide objective medical reports documenting that his or her impairment meets the specific criteria of the applicable listing. *Id.*; *accord Wilson v. Barnhart*, 284 F.3d 1219 (11th Cir. 2002). Further, "[a]n impairment that manifests only some of [the specific] criteria [of the applicable impairment], no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

In the Eleventh Circuit, there is no requirement that the ALJ "mechanically recite the evidence" when determining whether a claimant's impairments meet any of the listings. *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986) (holding that the ALJ could implicitly

---

Commissioner does cite to *Johnson v. Barnhart*, 148 F. App'x 838, 842 (11th Cir. 2005), for the proposition that an ALJ's finding that claimant's impairment does not meet or equal a listed impairment is sufficient evidence that the ALJ considered whether claimant's impairment meets or equals a listed impairment. *See* Doc. No. 25 at 5.

find that the claimant did not meet a listing); *see also Wilson*, 284 F.3d at 1224-25 (holding that the ALJ's statement that "the medical evidence establishes that [Wilson] had [several injuries] which constitute a 'severe impairment', but that he did not have an impairment *or combination of impairments* listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4." constitutes evidence that the ALJ considered the combined effects of Wilson's impairments).

At step three, the ALJ's opinion reads, in relevant part, as follows:

> The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> The claimant's seizure disorder is evaluated under Sections 11.02 and 11.03 of the Neurological Listings of Impairments. However, there is no evidence the claimant meets or equals the criteria of a listing under either section.

R. 18. Under *Miller*, the above finding would be inadequate and would require reversal. *See Miller*, 181 F.Supp.2d at 819-20. However, *Miller* is not binding upon this Court, and is contrary to the binding precedent in *Hutchison* and *Wilson*. Accordingly, the Court declines to follow *Miller*. Pursuant to *Hutchison* and *Wilson*, the above-referenced statement by the ALJ constitutes evidence that the ALJ adequately considered whether Claimant's impairment meets Listing 11.03. *Hutchison*, 787 F.2d at 1463; *Wilson*, 284 F.3d at 1224-25. Accordingly, the Court finds that the ALJ did not err by failing to discuss the evidence supporting its finding that Claimant's seizure disorder does not meet Listing 11.03.

Next, the Court must address whether the ALJ's finding that Claimant did not meet Listing 11.03 was supported by substantial evidence. Listing 11.00 reads, in pertinent part, as follows:

> A. Epilepsy. In epilepsy, regardless of etiology, degree of impairment will be determined according to type, frequency, duration, and sequelae of seizures. At least one detailed description of a typical seizure is required. Such description includes the presence or absence of aura, tongue bites, sphincter control, injuries associated with the attack, and postictal phenomena. The reporting physician should indicate the extent to which description of seizures reflects his own observations and the source of ancillary information. Testimony of persons other than the claimant is essential for description of type and frequency of seizures if professional observation is not available.
>
> Under 11.02 and 11.03, the criteria can be applied only if the impairment persists despite the fact that the individual is following prescribed antiepileptic treatment. Adherence to prescribed antiepileptic therapy can ordinarily be determined from objective clinical findings in the report of the physician currently providing treatment for epilepsy. Determination of blood levels of phenytoin sodium or other antiepileptic drugs may serve to indicate whether the prescribed medication is being taken. When seizures are occurring at the frequency stated in 11.02 or 11.03, evaluation of the severity of the impairment must include consideration of the serum drug levels. Should serum drug levels appear therapeutically inadequate, consideration should be given as to whether this is caused by individual idiosyncrasy in absorption of metabolism of the drug. Blood drug levels should be evaluated in conjunction with all the other evidence to determine the extent of compliance. When the reported blood drug levels are low, therefore, the information obtained from the treating source should include the physician's statement as to why the levels are low and the results of any relevant diagnostic studies concerning the blood levels. Where adequate seizure control is obtained only with unusually large doses, the possibility of impairment resulting from the side effects of this medication must be also assessed. Where documentation shows that use of alcohol or drugs affects adherence to prescribed therapy or may play a part in the precipitation of seizures, this must also be considered in the overall assessment of impairment level.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 11.00. Dr. Mamsa diagnosed Claimant with seizure disorder. R. 459. Although not diagnosed with epilepsy, the ALJ considered Claimant's seizure disorder under 11.02 and, more relevantly, 11.03, which reads:

> 11.03 Epilepsy--nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 11.03.

As an initial matter, the Court notes that the Commissioner argues that Claimant's seizure disorder fails to meet all of the criteria in Listing 11.03. Doc. No. 25 at 6-10. The ALJ focused on the infrequency of Claimant's seizures as the basis for finding Claimant's seizure disorder does not meet Listing 11.03. *See* R. 21. Accordingly, the Court will limit its review to determining whether there was substantial evidence to support the ALJ's determination that Claimant's seizures were too infrequent to meet Listing 11.03. *See Baker v. Commissioner of Social Security*, 384 F. App'x. 893, 896 (11th Cir. 2010) ("If an action is to be upheld, it must be upheld on the same bases articulated in the agency's order.").

The record reveals that Dr. Mamsa began treating Claimant with anticonvulsant medicine in August 2008. R. 459.[3] Dr. Mamsa's treatment records indicate that Claimant routinely reported experiencing breakthrough seizures despite being on anticonvulsant medication. R. 450-1, 455-6, 493-4. One treatment note, dated April 15, 2009, indicated that Claimant claimed she had three (3) breakthrough seizures a week. R. 456. The Evaluation Dr. Mamsa completed, however, contradicts Claimant's alleged frequency of seizures. R. 453. In particular, Dr. Mamsa opined that that the average frequency of Claimant's seizures was one to two per month, and indicated that the last three dates of Claimant's seizures were April 2009, March 2009, and

---

[3] Accordingly, the frequency of Claimant's seizures before August 2008 is irrelevant since Claimant's seizures must occur more than once a week in spite of three months of prescribed treatment, which, in this case, is anticonvulsants.

February 2009. R. 453.[4] On April 15, 2010, Claimant was evaluated by Dr. Juan Joy, a neurologist. R. 488-9. Dr. Joy noted Claimant reported that she has "several [seizures] a month" and that the anticonvulsant medications had little effect. R. 488. Dr. Joy further noted that it was unusual that Claimant's seizures have not been controlled by any of the medications. R. 489.

The record is largely devoid of evidence concerning the frequency of Claimant's seizures. Much, if not all, of the evidence concerning the frequency of Claimant's seizures is found in Dr. Mamsa's and Dr. Joy's treatment records. *See* R. 450-62, 488-91, 493-4. The ALJ appears to recognize this fact as she thoroughly discusses those portions of Dr. Mamsa's and Dr. Joy's treatment records that address the frequency of Claimant's seizures. *See* R. 21. Dr. Mamsa's and Dr. Joy's records provide substantial evidence to support the ALJ's finding that Claimant's seizure disorder does not meet Listing 11.03. In particular, the Evaluation, which the ALJ discusses in detail (R. 21), indicates that Claimant suffers an average of one to two seizures per month and, at the time of the Evaluation, suffered her last three seizures in April 2009, March 2009, and February 2009. R. 453. The frequency of seizures documented in the Evaluation does not meet the frequency requirement of more than one seizure per week. Further, Claimant has failed to direct the Court's attention to any evidence, other than her own reports of breakthrough seizures, which contradict the frequency of seizures detailed in the Evaluation. *See Wilkinson*, 847 F.2d at 662 (claimant must provide objective medical reports documenting that his or her impairment meets the specific criteria of the applicable listing).[5] Given the foregoing,

---

[4] The ALJ's decision states that the Evaluation indicated Claimant's last three seizures occurred in "February 2009, March 2009, and June 2009." R. 21. Upon review, however, the Court finds that the ALJ misinterpreted Dr. Mamsa's handwriting. Instead of June 2009, the Court finds that the note states "04/09" or April 2009. *Compare* R. 453 *with* R. 455-6.

[5] In Claimant's statement of the case, Claimant notes that she testified that "[she] used to have [seizures] as many as five times a week," but at the time of the hearing was having seizures "at least three [times] a week." Doc. No. 24 at 4-5 (citing R. 49).

the Court finds that the ALJ's conclusion that Claimant's seizure disorder does not meet Listing 11.03 is supported by substantial evidence.

### C. Claimant's Credibility.

Claimant argues that the ALJ's credibility determination is not supported by substantial evidence. Doc. No. 24 at 10-12. Conversely, the Commissioner argues that the ALJ's credibility determination is supported by substantial evidence. Doc. No. 25 at 10-13.

In the Eleventh Circuit, subjective complaints of pain are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms. By this standard, there must be: (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged symptom arising from the condition or (3) evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). "20 C.F.R. § 404.1529 provides that once such an impairment is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Foote v. Chater*, 67 F.3d at 1561; 20 C.F.R. § 404.1529.[6] Thus, once the pain standard is satisfied, the issue becomes one of credibility.

---

[6] Social Security Ruling 96-7p provides: "2. When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects.

3. Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.

A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Foote*, 67 F.3d at 1561. "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Id.* at 1561-62. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Id.* at 1562. The lack of a sufficiently explicit credibility finding may give grounds for a remand if the credibility is critical to the outcome of the case. *Id.*

Although the ALJ found that Claimant's impairments could reasonably be expected to cause her alleged symptoms, the ALJ determined that Claimant's testimony concerning the severity and frequency of the seizures was not credible. R. 20-22. Claimant argues that the ALJ's credibility determination is not supported by substantial evidence for the same reasons discussed in Claimant's arguments concerning the weight assigned to Dr. Mamsa's opinion and the ALJ's finding regarding Listing 11.03. Doc. No. 24 at 11. The Court, however, has found these arguments unavailing. As such, the Claimant's arguments concerning the weight assigned to Dr. Mamsa's opinion and the ALJ's finding regarding Listing 11.03 are similarly unavailing with respect the ALJ's credibility determination.

Claimant also advances two other arguments as to why the ALJ's credibility determination is not supported by substantial evidence. First, Claimant maintains that the ALJ's credibility determination relied on Dr. Mamsa's recommendation that Claimant seek a second medical opinion. Doc. No. 24 at 11. As such, Claimant argues that there is "no basis in either

---

4. In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." *Id.*

logic or fact" for the ALJ to interpret Dr. Mamsa's recommendation as casting doubt on Claimant's reports of seizures. Doc. No. 24 at 11-12. Given the context of the ALJ's statement concerning Dr. Mamsa's recommendation that Claimant seek a second medical opinion, the Court finds that the ALJ did not base her credibility determination on this fact. Accordingly, the Claimant's argument is unavailing.

Second, Claimant maintains that the ALJ's decision "makes it sound as though Dr. Mamsa made statements that it was unlikely [Claimant] was having breakthrough seizures." Doc. No. 24 at 12. Claimant asserts that Dr. Mamsa never questioned Claimant's reports of seizures. Doc. No. 24 at 12. As such, Claimant argues that the ALJ's determination that Dr. Mamsa made statements concerning the veracity of Claimant's reports of breakthrough seizures is not supported by substantial evidence. Doc. No. 24 at 12. The Court finds no merit in Claimant's subjective belief that the ALJ found Dr. Mamsa questioned the veracity of Claimant's reports of breakthrough seizures. The ALJ simply noted that the "records reveal [Dr. Mamsa] consistently noted the claimant 'claimed' to have breakthrough seizures but her testing was normal." R. 21. The foregoing excerpt is not a credibility determination, but simply a recitation of the notes contained in Dr. Mamsa's records. *See* R. 450-1, 455-6, 459-60, 493-94.

The ALJ cited several reasons in support of her credibility determination. Specifically, the ALJ cited the following; 1) objective medical testing – MRIs, CT scans, and neurological exams – of Claimant consistently yield negative results (R. 20-22); 2) the medical evidence is inconsistent with Claimant's allegations of confusion (R. 20); 3) evidence concerning the effect Claimant's seizures has on her ability to perform daily activities is inconsistent (R. 21-2); and 4) Claimant's seizure disorder is maintained conservatively with medication (R. 22). As evidenced above, Claimant does not challenge any of the foregoing reasons cited by the ALJ in support of

her credibility determination.  Despite this fact, the Court finds that the ALJ's credibility determination is supported by substantial evidence.  *See Foote*, 67 F.3d at 1561-62 (reviewing court will not disturb credibility finding with sufficient evidentiary support).

### III.  CONCLUSION.

For the reasons stated above, it is **ORDERED** that the final decision of the Commissioner be **AFFIRMED**, and the Clerk is directed to enter judgment in favor of the Commissioner and to close the case.

**DONE** and **ORDERED** in Orlando, Florida on August 12, 2013.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Nora Leto
PO Box 7306
Lakeland, FL 33807-7306

John F. Rudy, III
Suite 3200
400 N Tampa St
Tampa, FL 33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Susan Kelm Story, Branch Chief
Christopher G. Harris, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia 30303-8920

The Honorable Julia D. Gibbs
Administrative Law Judge
c/o Office of Disability Adjudication and Review
SSA ODAR
Nat'l Hearing Center
5107 Leesburg Pike

- 16 -

Falls Church, VA 22041